## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NORTH POINT ADVISORS, INC.
and ADRIAN ANDERSON,

      Plaintiff,

                                  Case No. 15-13471

v.                              HON. DENISE PAGE HOOD

THE DETROIT POLICE AND FIRE
RETIREMENT SYSTEM and
RYAN BIGELOW,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS [#14]

### I.    INTRODUCTION

On July 25, 2016, Defendants filed a Motion to Dismiss [Dkt. No. 14].

Plaintiffs filed a response to the Motion to Dismiss on November 30, 2016, nearly

three months late and on the same day the Court held a hearing on Defendants'

Motion to Dismiss.  For the reasons that follow, the Court grants in part and denies

in part Defendants' Motion.

### II.    BACKGROUND

This action arises out of an employment relationship between Plaintiffs and

Defendant Detroit Police and Fire Retirement System (the "PFRS"). The PFRS is a defined pension benefit plan and defined contribution plan, and the employer and municipal plan sponsor for the system is the City of Detroit. The PFRS exists to pay benefits to its active members, retirees and beneficiaries.

Plaintiffs served as investment managers and due diligence advisors for the PFRS, managing certain investments including the PFRS's emerging manager portfolio. Plaintiffs allege that their investment performance was satisfactory and had been approved by the PFRS's Trustees's investment consultant, Wilshire Associates. Plaintiffs allege that they provided satisfactory performance and work for the PFRS, but that:

> Defendant PFRS, through Defendant Ryan Bigelow, made and published false statements in the October 2014 board meetings against Defendants [sic] which resulted in the PFRS Board of Trustees' termination of Defendants [sic]. The statements suggested that Plaintiffs had been involved in illegal conduct and falsely associated Plaintiffs with recent criminal convictions of City of Detroit public officials[,] including the former Mayor of the City [of] Detroit, Mayor Kwame Kilpatrick[.]

[Dkt. No. 12, PgID 48-49 at ¶12] Plaintiffs also allege:

> Defendants' false statements contain numerous false implications about Plaintiffs, including without limitation:
>
> (1) That Plaintiff Adrian Anderson and/or Plaintiff [North Point Advisors, LLC ("NPA")] were charged with crimes relative to the highly publicized public corruption charges that were brought against some of

the City of Detroit's elected and/or appointed officials, agents and/or affiliates. In fact, neither Plaintiff was ever charged with any criminal wrongdoing of any kind or nature whatsoever by any law enforcement or prosecutorial entity.

       (2) The implication that Plaintiffs' services are "tainted" or would otherwise cast aspersion upon the Defendants or other similar potential clients is highly offensive to Plaintiff Anderson as it would be to any reasonable person of ordinary sensibilities in Plaintiff Anderson's position and is harmful to the business reputations of both Plaintiffs.

[Dkt. No. 12, PgID 50-51 at ¶ 21]

On October 1, 2015, Plaintiffs filed a three-count Complaint stemming from the alleged statements by Defendants: (1) Count I - business defamation (libel and slander)/defamation per se; (2) Count II - false light; and (3) Count III - intentional infliction of emotional distress. On May 24, 2016, the Court issued Plaintiffs an Order to Show Cause why this case should not be dismissed for failure to prosecute. On June 7, 2016, Plaintiffs responded, and on June 8, 2016, the Court vacated the Order to Show Cause. On June 9, 2016, Plaintiffs filed an Amended Complaint. Upon agreement of the parties, Plaintiffs filed a Second Amended Complaint on June 27, 2016.

## III.    APPLICABLE LAW & ANALYSIS

### A.    Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's

complaint.  Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff.  *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful.  *Id.* at 556.  Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B.   Analysis

### 1.   PFRS Entitled to Qualified Immunity

Pursuant to the Governmental Tort Liability Act ("GTLA"), M.C.L.A. § 691.1401, *et seq*., a governmental agency is entitled to absolute tort immunity for conduct undertaken by the agency in the exercise of a government function.  The GTLA provides:

[A] governmental agency is immune from tort liability if the

4

governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

M.C.L.A. § 691.1407(1). A "governmental function" is an activity expressly or impliedly authorized by constitution, statute, local charter or ordinance, or other law. *See, e.g., EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340, 351 (6th Cir. 2008); M.C.L.A. § 691.1401(b). Governmental immunity applies in the context of both intentional and negligent torts, as "there is no intentional tort exception to the governmental immunity statute." *EBI-Detroit*, 279 F. App'x at 349 (quoting *Smith v. State Dep't of Public Health*, 428 Mich. 540 (1987)).

The Court finds that Plaintiffs' tort claims in Counts I-III are not viable as a matter of law. The law is well-established that a plaintiff may not assert claims for defamation, false light, or intentional infliction of emotional distress against a governmental agency performing a governmental function. *See, e.g., EBI-Detroit*, 279 F. App'x at 349-351 (finding the Detroit Water and Sewer Department and City of Detroit immune from suit for defamation); *McCarthy v. Scofield*, 2009 Mich. App. LEXIS 2100, at *21 (Mich. Ct. App. Oct. 8, 2009) (finding the Michigan Department of Human Services immune from suit for false-light invasion of privacy); *V.R. Entm't v. City of Ann Arbor*, 2012 U.S. Dist. LEXIS 87091, at **17-18 (E.D. Mich. June 22,

2012) (finding the City of Ann Arbor and Ann Arbor Police Department immune from suit for intentional infliction of emotional distress).

In this case, it is undisputed that PFRS is a governmental agency. Likewise, the alleged conduct by the PFRS occurred at its October 2014 board meetings. It is undisputed, and the Court holds, that board meetings involve the exercise or discharge of the duties of the PFRS and constitute a governmental function. *See Estes v. Anderson*, 2012 Mich.App. LEXIS 2236, at *13 (Mich. Ct. App. Nov. 15, 2012) (after stating that "the focus is on the general activity, not the specific conduct involved at the time of the alleged tort," the court held that the conduct of PFRS related to its investment decisions was, as a matter of law, a "governmental function" (citation omitted)).

The Court grants Defendants' Motion to Dismiss as it relates to PFRS. Defendant Bigelow is not entitled immunity with respect to any of Plaintiffs' claims. The Court now turns to assess the viability of each of Plaintiffs' claims as they relate to Bigelow to determine whether any of them survives Defendant's Motion.

> 2. *Defamation Claim*

In order to prevail on a defamation claim, a plaintiff must prove:

1. A false and defamatory statement concerning plaintiff;
2. An unprivileged publication to a third party;
3. Fault amounting to at least negligence on the part of the publisher; and

4.      Either actionability per se or the existence of special harm.

*Rouch v. Enquirer & News (After Remand)*, 440 Mich. 238, 251 (1992); *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014).   A plaintiff must specifically plead the defamatory statements on which the complaint is based; he cannot rely on general and conclusory statements. *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich.App. 84, 115-16 (1992); *Williams v. Detroit Bd. of Educ.*, 523 F. Supp. 2d 602, 606 (E.D. Mich. 2007) (a plaintiff "must specifically identify the statements alleged to be defamatory").   "The essentials of a cause of action for libel or slander must be stated in the complaint, *including allegations as to the particular defamatory words complained of*, the connection of the defamatory words with the plaintiff where such words are not clear or are ambiguous, and the publication of the alleged defamatory words." *Ledl v. Quik Pik Food Stores, Inc.*, 133 Mich.App. 583, 589 (1984) (internal quotation marks and citation omitted) (emphasis added).

Defendants contend, and the Second Amended Complaint reveals, that Plaintiffs have not identified the words uttered or published by PFRS through Bigelow that they contend were defamatory.  Taking the pleadings in a light most favorable to Plaintiffs, they have alleged that:

Defendant  PFRS,  through  Defendant  Ryan  Bigelow,  made  and

7

published false statements in the October 2014 board meetings against Defendants [sic] which resulted in the PFRS Board of Trustees' termination of Defendants [sic]. The statements suggested that Plaintiffs had been involved in illegal conduct and falsely associated Plaintiffs with recent criminal convictions of City of Detroit public officials[,] including the former Mayor of the City [of] Detroit, Mayor Kwame Kilpatrick[.]

[Dkt. No. 12, PgID 48-49 at ¶12]  The Court concludes that the Second Amended Complaint does not set forth "the particular defamatory words complained of;" rather, Plaintiffs have asserted only general and conclusory statements that are inadequate to sustain a cause of action for defamation. *See Royal Palace*, 197 Mich.App. at 115-16.

As Plaintiffs have failed to adequately plead a necessary element of their defamation claim, the Court holds that dismissal of Plaintiffs' defamation claim is warranted and appropriate. *Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 169 (6th Cir. 2005).

3.   *False Light*

To state a claim for false light (invasion of privacy) in Michigan, a plaintiff must allege: (1) publication of a false statement harmful to another's interest; (2) the intention that the publication cause harm, recognition of likely harm, or negligence to likely harm; and (3) knowledge that the statement is false or reckless disregard to its veracity. *See Kollenberg v. Ramirez*, 127 Mich.App. 345, 352 (1983). These

8

elements must be "specifically pleaded, including the allegations with respect to the defamatory words and the publication of the defamatory words." *Gonyea v. Motor Parts Federal Credit Union*, 192 Mich.App. 74, 77 (1991) (citing *Ledl*, 133 Mich. App. at 589.

Plaintiffs allege that:

Defendants' false statements contain numerous false implications about Plaintiffs, including without limitation:

(1) That Plaintiff Adrian Anderson and/or Plaintiff NPA were charged with crimes relative to the highly publicized public corruption charges that were brought against some of the City of Detroit's elected and/or appointed officials, agents and/or affiliates. In fact, neither Plaintiff was ever charged with any criminal wrongdoing of any kind or nature whatsoever by any law enforcement or prosecutorial entity.

(2) The implication that Plaintiffs' services are "tainted" or would otherwise cast aspersion upon the Defendants or other similar potential clients is highly offensive to Plaintiff Anderson as it would be to any reasonable person of ordinary sensibilities in Plaintiff Anderson's position and is harmful to the business reputations of both Plaintiffs.

[Dkt. No. 12, PgID 50-51at ¶ 21] As with the defamation claim, Plaintiffs do not identify the alleged derogatory or false statements, nor do they offer any facts which would show that such statements were false or misleading.  As the above allegation states, "Defendants' false statements contain numerous false <u>implications</u> . . ." [*Id.* (emphasis added)]  Implications, which require the reader or listener to arrive at a conclusion, are not "specifically pleaded, [and do not include] allegations with

9

respect to the defamatory words and the publication of the defamatory words," *Gonyea*, 192 Mich. App. at 77. The Court holds that Plaintiffs' false light claim fails as a matter of law and grants Defendants' Motion as it relates to that claim.

    *4.    Intentional Infliction of Emotional Distress*

To prevail on a claim for intentional infliction of emotional distress, "a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hilden v. Hurley Med. Ctr.*, 831 F.Supp.2d 1024, 1046 (E.D. Mich. 2011) (citing *Hayley v. Allstate Ins. Co.*, 262 Mich.App. 571, 577 (2004) (internal citation and quotations omitted)). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 237 Mich. App. 670, 674 (1999). It is not sufficient to show that the defendant acted tortiously, intentionally, or even criminally. *Id*. The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985).

The Court finds that Plaintiffs have alleged conduct of Defendant that could

rise to the level of being "atrocious and utterly intolerable in a civilized community" or that would make an average member of the community exclaim, "Outrageous!" The Court notes that Plaintiffs still fail to allege the specific statements made by Defendants that caused Anderson harm, but such failure is not fatal to the claim for intentional infliction of emotional distress. Plaintiffs allege that "Defendants chose to disseminate the false statements falsely telling the world that they are corrupt crooks worthy only of shunning and avoidance. Defendants' choice to vilify and publicly attack Plaintiffs was extreme and outrageous conduct that no reasonable person in a civilized society should be expected to endure." [Dkt. No. 12, PgID 52 at ¶ ¶ 30-31]

The Court finds that a claim based on someone falsely stating that a person (or his company) is associated with well-known public officials convicted of public corruption, and that the person is a "corrupt crook[] worthy only of shunning and avoidance," sufficiently alleges extreme and outrageous conduct for purposes of stating an intentional infliction of emotional distress under Michigan law. *See, e.g., Mroz v. Lee*, 5 F.3d 1016, 1019-1020 (6th Cir. 1993) (intentional infliction of emotional distress claim lies where "defendant deliberately misinformed plaintiff's business associates that plaintiff engaged in criminal behavior, deliberately used this misinformation to manipulate the legal and financial system to plaintiff's great

detriment, and personally threatened the safety of plaintiff and plaintiff's family");

*Miller v. Currie*, 50 F.3d 373, 378 (6th Cir. 1995) ("While the circumstances surrounding the events . . . are, naturally, not all laid out in the complaint, we do not agree with the district court that Miller could not conceivably prove any set of facts in support of her allegations that would entitle her to relief.").  The Court finds that Plaintiffs have adequately pled a claim for intentional infliction of emotional distress.

The Court concludes that Defendants' Motion must be denied as it relates to Plaintiffs' claim of intentional infliction of emotional distress against Anderson (NPA is a business entity and cannot suffer emotional distress).

## IV.    CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendants' Motion to Dismiss [Dkt. No. 14] is **GRANTED IN PART** and **DENIED IN PART**.

IT IS SO ORDERED.


Dated:  March 22, 2017   S/Denise Page Hood_____
                         Denise Page Hood
                         Chief Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon counsel of record on March 22, 2017, by electronic and/or ordinary mail.

                         S/LaShawn R. Saulsberry_____
                         Case Manager

12