UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORTH POINT ADVISORS, INC.
and ADRIAN ANDERSON,

    Plaintiff,

v.

Case No. 15-13471
HON. DENISE PAGE HOOD

THE DETROIT POLICE AND FIRE
RETIREMENT SYSTEM and
RYAN BIGELOW,

    Defendants.

_____/

## ORDER GRANTING BIGELOW'S MOTION FOR SUMMARY JUDGMENT [#24]

**I.    INTRODUCTION**

On January 31, 2018, Ryan Bigelow, the only remaining Defendant ("Bigelow"), filed a Motion for Summary Judgment [Dkt. No. 24]. Plaintiff Adrian Anderson, the only remaining Plaintiff ("Anderson"), filed a response on April 13, 2018, after the Court rescheduled the hearing to be held on April 11, 2018. A hearing on the Motion was held on April 16, 2018. For the reasons that follow, the Court grants Bigelow's Motion.

**II.    BACKGROUND**

1

This action arises out of an employment relationship between the named Plaintiffs and Defendant Detroit Police and Fire Retirement System ("PFRS"). PFRS is a defined pension benefit plan and defined contribution plan, and the employer and municipal plan sponsor for the system is the City of Detroit. PFRS exists to pay benefits to its active members, retirees and beneficiaries.

Plaintiffs served as investment managers and due diligence advisors for PFRS, managing certain investments including PFRS's emerging manager portfolio. Plaintiffs allege that their investment performance was satisfactory and had been approved by PFRS's Trustees's investment consultant, Wilshire Associates, before PFRS terminated the relationship due to comments made by Bigelow.

On June 29, 2016, Plaintiffs filed a three-count Second Amended Complaint stemming from the alleged statements by Defendants: (1) Count I - business defamation (libel and slander)/defamation per se; (2) Count II - false light; and (3) Count III - intentional infliction of emotional distress. Plaintiffs alleged that they provided satisfactory performance and work for PFRS but that:

> Defendant PFRS, through Defendant Ryan Bigelow, made and published false statements in the October 2014 board meetings against Defendants [sic] which resulted in the PFRS Board of Trustees' termination of Defendants [sic]. The statements suggested that Plaintiffs had been involved in illegal conduct and falsely associated Plaintiffs with recent criminal convictions of City of Detroit public officials[,] including the former Mayor of the City [of] Detroit, Mayor Kwame Kilpatrick[.]

2

[Dkt. No. 12, PgID 48-49 at ¶12]

On March 22, 2017, the Court dismissed Counts I and II, in their entirety, and Count III, as it related to PFRS and Plaintiff North Point Advisors, Inc. *See* Dkt. No. 17. As a result, the sole remaining claim is Anderson's intentional infliction of emotional distress claim against Bigelow. During discovery, the following evidence became known.

On October 2, 2014, at the request of PFRS's Board of Trustees (the "Board"), Bigelow addressed the Board regarding PFRS's Emerging Manager Program. Dkt. No. 24, Ex. B at 19-55; Ex. C at 19-20; Ex. D; Ex. E; Ex. F. In a memorandum addressed to the Board, Bigelow recommended that management of the Emerging Manager Program be brought "in-house," to be managed by PFRS's investment staff, rather than continue the relationship with Plaintiffs. Bigelow's memorandum identified four reasons for the recommendation: (1) "the lack of continuity and control between the broad investment program [of PFRS] and the Emerging Manager Program," (2) uncertainty as to PFRS's "direct authority to hire/fire managers under the Emerging Manager Program," (3) cost-savings of "$400,000 per year should the board decide to bring the program in-house," and (4) "concerns with the retirement system being the only (or a significantly large) client of a vendor or investment manager/advisor." Dkt. No. 24, Ex. D.

There is no evidence that Anderson was present at the October 2, 2014 meeting, and his deposition reveals that his understanding of what occurred at the meeting – at least at the time Plaintiffs' initiated this lawsuit – was based entirely on what Anderson was told by Donald Tabron, an employee of North Point Advisors, Inc. Dkt. No. 24, Ex. A, at 45-46. An audio of the October 2, 2014 Board meeting has been submitted as evidence. *See* Dkt. No. 24, Ex. H. During discovery, Anderson identified only one allegedly offensive statement made by Bigelow at the October 2, 2014 Board meeting (the "IIED Statement"):

> I think this board has a history … and to the extent that you can separate yourself from some of that bad history … you make yourself look pretty good. And I think that the individual that runs North Point is tied to some of that bad history.

Dkt. No. 24, Ex. B, at 39.[1]

## III. APPLICABLE LAW & ANALYSIS

### A. Standard of Review

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[1]*See* Dkt. No. 24, Ex. G (Plaintiffs' Discovery Responses, Response to Interrogatory No. 1); Dkt. No. 24, Ex. A at 43, 66-69.

4

322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

**B.     Analysis**

To prevail on a claim for intentional infliction of emotional distress, "a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hilden v. Hurley Med. Ctr.*, 831 F.Supp.2d 1024, 1046 (E.D. Mich. 2011) (citing *Hayley v. Allstate Ins. Co.*, 262 Mich.App. 571, 577 (2004) (internal citation and quotations omitted)). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 237 Mich. App. 670, 674 (1999).  It is not sufficient to show that the defendant acted tortiously, intentionally, or even criminally. *Id.* The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985).

Although the Court held that Plaintiffs conduct of Defendant, <u>as alleged in the Second Amended Complaint</u>, could rise to the level of being "atrocious and utterly intolerable in a civilized community" or would make an average member of the community exclaim, "Outrageous!," the Court finds that Plaintiffs have <u>failed to</u>

6

submit any evidence to support their claim. Unlike Plaintiffs' allegations, the IIED Statement does not indicate that Plaintiffs: (1) "were charged with crimes relative to the highly publicized public corruption charges;" or (2) "are corrupt crooks worthy only of shunning and avoidance." Anderson acknowledged that Bigelow never used the word "crime" at the October 2, 2014 meeting and never stated that Anderson or anyone affiliated with North Point Advisors, Inc. had been charged with any crime. Dkt. No. 24, Ex. A at 68-69. Anderson testified only that he believed Bigelow's comment implied that Anderson was associated with certain criminal trials taking place at the time of the October 2, 2014 Board meeting. Dkt. No. 24, Ex. A at 47, 67-68. The Court does not find that Anderson's belief regarding that implication, even if accurate, would arouse the average member of the community to "arouse his resentment against" Bigelow. And, although Plaintiffs' allegations indicated that Defendants falsely stated that Plaintiffs were associated with well-known public officials convicted of public corruption (specifically, former Detroit Mayor Kwame Kilpatrick and others), no evidence has been submitted to the Court that Bigelow falsely stated that Plaintiffs were associated with such persons.

For the stated reasons, the Court finds that the IIED Statement cannot be categorized as "atrocious and utterly intolerable in a civilized community," nor would it make an average member of the community exclaim, "Outrageous!" The Court

concludes that Anderson cannot satisfy the first element of his intentional infliction of emotional distress claim.

The Court finds that there is no evidence that Bigelow intended to cause severe emotional distress to Anderson or even that Bigelow's statement could have caused severe emotional distress for Anderson. Anderson testified at his deposition that he has no knowledge or other evidence regarding what Bigelow intended by making the IIED Statement. Dkt. No. 24, Ex. A at 68. Anderson testified that he has no knowledge or other evidence as to whether the IIED Statement had any bearing on how the Board voted at the October 2, 2014 meeting. Dkt. No. 24, Ex. A at 71-72, 74-75. And, when asked at his deposition about his alleged emotional distress, Anderson testified that he has never been diagnosed as depressed by any medical or other professional, has not received treatment in connection with his alleged distress, and has not suffered any other manifestation of the alleged distress in his life. Dkt. No. 24, Ex. A at 85-86, 113, 115. Accordingly, the Court concludes that there is an absence of material fact regarding the second, third, and fourth elements of Anderson's intentional infliction of emotional distress claim.

The Court concludes that Bigelow's motion for summary judgment must be granted.

### IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Bigelow's Motion for Summary Judgment [Dkt. No. 24] is **GRANTED**.

IT IS FURTHER ORDERED that this cause of action is **DISMISSED WITH PREJUDICE**.

Judgment shall be entered accordingly.

IT IS ORDERED.

        S/Denise Page Hood
        Denise Page Hood
        Chief Judge, United States District Court

Dated: September 11, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 11, 2018, by electronic and/or ordinary mail.

        S/LaShawn R. Saulsberry
        Case Manager